675 A.2d 577

**PERDUE FARMS INCORPORATED**

v.

**Linwood HADDER.**

No. 835, Sept. Term, 1995.

Court of Special Appeals of Maryland.

May 1, 1996.

John E. Griffith, Jr. (Piper & Marbury L.L.P., Baltimore, Raymond S. Smethurst, Jr. and Adkins, Potts & Smethurst, L.L.P., Salisbury, on the brief), for Appellant.

J. Joseph Curran, Jr., Attorney General and M. Rosewin Sweeney, Assistant Attorney General, Baltimore, for Amicus Curiae.

No brief or appearance by Appellee's counsel.

Argued before WILNER, C.J., BLOOM, J., and PAUL E. ALPERT, Judge (retired, Specially Assigned).

BLOOM, Judge.

Perdue Farms, Inc., successor by merger to Showell Farms, Inc., appeals from a judgment of the Circuit Court for Worcester County affirming a decision of the Worcester County Board of Zoning Appeals that granted Showell Farms's application for a special exception to permit irrigation spraying of wastewater but imposed an onerous condition that Showell Farms believed was beyond the Board's power to impose. Appellee, Linwood Hadder, was one of several protestants to the granting of the permit who filed cross-appeals from the Board's decision. All of the other protestants and cross-appellants in the circuit court withdrew from the case, leaving Hadder as the only respondent and cross-appellant below. Appellee did not file a brief in this Court.

The sole issue presented in this appeal is whether the comprehensive regulation by the Maryland Department of the Environment of water quality within the State preempts the authority of the Worcester County Board of Appeals to impose the challenged condition limiting the amount of nitrogen in the wastewater irrigation spray.

The State of Maryland has filed an *amicus curiae* brief espousing appellant's argument that the comprehensive regulations promulgated by the Department of the Environment does preempt the authority of the Board of Zoning Appeals to impose the condition that it attached to the wastewater spray irrigation special exception. We agree, and shall reverse the judgment of the circuit court.

### Statement of Facts

For many years Showell Farms (now Perdue Farms) has operated a poultry processing facility in Worcester County, Maryland. For over 15 years, appellant has discharged its wastewater into the St. Martin River after pretreatment on

the site by biological treatment in a lagoon, clarification, filtration with a sand filter, and chlorination.

In 1990, appellant applied for renewal of its wastewater discharge permit. At that time, the Maryland Department of the Environment (MDE) was endeavoring to phase out discharge of wastewater into surface waters and replace it with a spray irrigation system, whereby the wastewater is used to irrigate crops. The crops remove nutrients from the wastewater and utilize them for growth. The result is that substances that would be deleterious to water quality if discharged into surface water or allowed to leach into groundwater are turned to beneficial use. Microbial action in the soil further treats the irrigation wastewater, reducing the amount of undesirable elements to an acceptable level.

To this end, the MDE conditioned its new wastewater discharge permit upon appellant's implementing a spray irrigation system. Both parties entered into a compliance agreement that required appellant to install a spray irrigation system. To comply with that agreement, appellant acquired 700 acres of land, 200 of which would be used for spraying, with the rest serving as a buffer.

In meeting federal and state water quality standards, the MDE permit sets forth numerous requirements, three of which are especially important in our case. First, the permit requires pretreatment of wastewater prior to irrigation. Second, in order to obtain optimal nutrient absorption, the permit specifies which fields may be irrigated and the amount of water that can be sprayed on the fields during given periods. Moreover, the permit prohibits spraying on bare soils. Finally, the permit prohibits appellant from spraying wastewater if the irrigation would harm groundwater quality. The permit expressly provides:

> Discharge of the treated wastewater shall not cause the natural (background) groundwater quality, as measured in the monitoring wells to exceed standards for type 1 aquifers as specified in COMAR 26.08.02.09.C, "Groundwater Quality Standards."

The Groundwater Quality Standards specify, *inter alia,* that nitrate as nitrogen may not exceed 10 mg/L. The permit requires appellant to monitor thirty-four wells to assure compliance.

Worcester County permits spray irrigation of wastewater on agricultural property as a special exception. Appellant applied to the Worcester County Zoning Board (Board) for a special exception.

At a hearing on 14 July 1994, the Board accepted a report from the Wooten Company, of Raleigh, North Carolina (Wooten Report) into evidence. The report recommended a nitrogen limit of 16 Mg/L at the nozzle:

> Given the level of pretreatment proposed, organic loading (BOD5) and suspended solids loading will be inconsequential. Nitrogen loading is of great concern. A major consideration with any spray irrigation system is that it not cause the groundwater nitrate concentrations to exceed the drinking water standard of 10 mg/L. Nitrogen loadings for the proposed Showell Farms system may push this criteria. The pretreatment system that will be used has been modified to provide partial nitrogen removal. Based on projected loading rates, in order for the system to function without jeopardizing groundwater nitrate concentrations, partial nitrogen removal will be necessary.

Another witness for the other opponents of the special exception testified that nitrogen should be limited to 10 mg/L at the Nozzle.

Dane Bauer, Deputy Director of Maryland's Water Management Administration, responded to the Wooten Report in a letter to the Board of Zoning Appeals. He wrote:

> We have noted the comments of the Wooten Company on the proposal and would like to offer the following in response.
> 1. Nitrogen Loading. Our permit will require the growth and harvesting of cover crops on the site that utilize nitrogen. The irrigation rate is limited to provide no more nitrogen than the cropping of the site will remove. This

requirement is a key provision of our irrigation permits. *Additional pretreatment to remove nitrogen is not necessary.*

Testifying at the July 14th hearing, Bauer pointed out that the MDE controls nitrogen spray irrigation systems through the loading rates, application rates, crop management plans, and other limitations of the permit. He concluded that the amount of nitrogen discharges at the nozzle of the spray irrigation system is irrelevant. Rather, he maintained, what is relevant is the impact of the wastewater stream on groundwater after uptake by the crops, microbial action, and filtration through soils. Most important, Bauer testified that MDE's discharge permit program is preemptive:

First of all, the discharge permit is a preemptive program by State law. The only agency in the State that has jurisdiction over things that require discharge permits are the Maryland Department of Environment. And we do delegate some authority to the local health department, but we don't delegate authority for these types of systems.

The Board granted the special exception, but imposed a condition that "the nitrogen concentration in the sprayed (irrigated) wastewater [shall] not exceed twenty milligrams per liter (20 mg/L), on a flow rated (sic) annual average basis." In developing this condition, the Board wrote:

In rendering its decision (as embodied in this "Opinion") on the application, the Board is not unmindful that the State believes that State law (or regulations) preempts local officials from regulating certain facets of the proposed spray irrigation system; e.g., storage capacity and limits on nitrogen concentration. While respecting the State's view on this matter, it is the Board's belief that the proper discharge of the duty and obligation imposed upon it by the Zoning Ordinance, i.e., to approve only such requests for special exceptions as "will not adversely affect the health, safety, morals, security or general welfare of residents, workers or visitors in the area", mandates the imposition of such conditions on a special exception as will ensure such non-injurious

consequences. It is the Board's belief that the conditions relating to nitrogen limits and storage capacity, as herein imposed, are essential to the public health, safety and welfare.

While the Board's decision was on appeal to the circuit court, the MDE issued a permit for appellant's proposed spray irrigation system. The permit formalized an early warning procedure to ensure that appellant's discharge would not cause groundwater to exceed the state drinking water standard for nitrates of 10 mg/L. The final permit does not impose a nitrogen limitation at the nozzle.

The circuit court affirmed the Board's decision. Appellant then noted this timely appeal.

### Discussion

State law may preempt local law in one of three ways: (1) preemption by conflict; (2) express preemption; or (3) implied preemption. *Talbot County v. Skipper*, 329 Md. 481, 486–87, 620 A.2d 880 (1993). Preemption by conflict exists if a local ordinance[1] "prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law." *Id.* at 487 n. 4, 620 A.2d 880 (citing *Boulden v. Mayor*, 311 Md. 411, 415–17, 535 A.2d 477 (1988)); *Rockville Grosvenor v. Montgomery County*, 289 Md. 74, 96–99, 422 A.2d 353 (1980); *County Council v. Investors Funding*, 270 Md. 403, 421–423, 312 A.2d 225 (1973); *City of Baltimore v. Sitnick & Firey*, 254 Md. 303, 313–14, 255 A.2d 376 (1969); *Rossberg v. State*, 111 Md. 394, 74 A. 581 (1909); *Holmes v. Maryland Reclamation Associates, Inc.*, 90 Md.App. 120, 600 A.2d 864, *cert. dismissed sub nom. County Council of Harford Co. v. Maryland Reclamation Assoc.*, 328 Md. 229, 614 A.2d 78 (1992). Preemption analysis is disjunctive; the court need only find that one of the three preemption areas exists. Since state law governing

---

1. Preemption by conflict is not limited to local ordinances but may also include ad hoc regulations created by a board that in essence has the effect of law.

nitrogen limitations conflicts with the Worcester Board's conditions, we need not discuss preemption by implication or express preemption.

The Board's nitrogen limitation would prohibit spraying of water exceeding 20 mg/L of nitrogen at the nozzle even though MDE allows it so long as it does not exceed 10 mg/L of nitrogen in the groundwater. In essence, the zoning board is impermissibly second guessing MDE on the question of how best to achieve compliance with a standard contained in MDE's water quality regulations. The Board imposed a standard at the nozzle potentially requiring additional pretreatment prior to spraying. This could be accomplished at a substantially higher price for appellant, thus abdicating the State's goal of encouraging spray irrigation over surface water discharge. The State's plan balances the need to have a better disposal system with the need to protect the groundwater. The State, in balancing these interests, does not place a limitation at the nozzle but instead relies on a combination of (1) existing pretreatment, (2) treatment after the water leave the nozzle, and (3) stringent monitoring. The State permit requires a management plan demonstrating that the combination of flow rate, soil types, crop types, and rotation of fields and crops will prevent excess nitrogen from reaching groundwater. The MDE permit further assures compliance by requiring groundwater monitoring and other responsive actions.

■ The approach adopted by the Board is patently in conflict with the State approach. The State approach would permit appellant to spray irrigate with water that contains a concentration, for example, of 21 mg/L of nitrogen at the nozzle, on an annual basis, so long as nitrate levels in groundwater do not exceed the 10 mg/L standard. The Board, on the other hand, would not permit such spraying in the above case because the nitrogen level exceeds 20 mg/L at the nozzle. Thus, there is an inherent conflict between the State's approach and the Board's approach in achieving safe drinking water standards.

The MDE's approach is authorized by statute. Section 9–324(a) of the Environment Articles states that, "[s]ubject to the provisions of this section, the Department may issue a discharge permit if the Department finds that the discharge meets: (1) all applicable State and federal water quality standards...." The MDE, in issuing a permit, required appellant to meet the state requirements that nitrogen levels not exceed 10 mg/L in the groundwater.

We believe that the Board's authority to impose the condition complained of is preempted by state law, because the Board's conditions would prohibit spraying in situations in which the State wants to encourage it. Therefore, we reverse the judgment of the Circuit Court for Worcester County that affirmed the Board's conditions on its grant of the special exception.

JUDGMENT REVERSED. CASE REMANDED TO CIRCUIT COURT FOR WORCESTER COUNTY WITH DIRECTION TO REMAND TO THE WORCESTER COUNTY BOARD OF ZONING APPEALS FOR DELETION OF THE CONDITION LIMITING NITROGEN CONCENTRATIONS FROM THE WASTEWATER IRRIGATION SPECIAL EXCEPTION GRANTED TO APPELLANT.

COSTS TO BE PAID BY APPELLEE.