# KEY FEDERAL SAVINGS & LOAN ASSOCIATION *v.* ANNE ARUNDEL COUNTY, MARYLAND

[No. 1276, September Term, 1982.]

*Decided May 9, 1983.*

The cause was argued before WEANT, BISHOP and ALPERT, JJ.

*David A. Simison,* with whom were *Solomon & Messinger, P.A.* on the brief, for appellant.

*Robert M. Pollock, Assistant County Solicitor for Anne Arundel County,* with whom was *Steven P. Resnick, County Solicitor for Anne Arundel County,* on the brief, for appellee.

BISHOP, J., delivered the opinion of the Court.

Key Federal Savings and Loan Association appeals a summary judgment entered in the Circuit Court for Anne Arundel County disposing of its Bill of Complaint for declaratory and other relief against Anne Arundel County.

On November 13, 1980, by virtue of a foreclosure proceeding, Key became the owner of two lots in McKinsey Woods, Section 1 Addition, in Severna Park, Anne Arundel County. The lots had been previously owned and developed by Bama, Inc., who had conveyed them to Key's mortgagor and predecessor in title, Sargent Construction Co., Inc.

On June 1, 1981, Key procured building permits for these two lots. After Key had constructed the foundations for two houses, a letter dated August 7, 1981, from the Office of Law of Anne Arundel County, came to the attention of Key. The second paragraph of that letter created the dilemma which led Key to file its Bill of Complaint. That paragraph reads as follows:

> "There are presently pending proceedings in the Circuit Court for Anne Arundel County in the style of *Anne Arundel County v. Bama, Inc., et al,* in which the County has asked for full payment of the bond and suspension of the privileges of conveyance and construction granted under the public works agreement, which agreement is now in total default. Pending the completion of satisfactory access, storm drainage and illumination as called for by the public works agreement the County may exercise its contractual perogative (sic) under the public works agreement, of withholding occupancy permits."

The "pending proceedings" referred to in the County's letter were the subject of an appeal before this Court which we decided on November 5, 1982, *Bama, Inc. v. Anne Arundel County,* 53 Md. App. 14 (1982). We set out here the facts as they are set out in that opinion:

"Appellant, Bama, Inc., is a developer who [sic] agreed to improve a road adjoining its development and to donate 15 feet of land to widen it. This agreement was imposed by appellee Anne Arundel County as a condition for approving the right to develop. Appellant Fidelity and Deposit Company of Maryland (F & D) guaranteed Bama's performance by issuing to the County a performance bond in the amount of $30,000.

The suit by the County in the Circuit Court for Anne Arundel County upon default demands judgment in that amount. Appellants defend by claiming that they were forced to participate in an illegal contract in order to obtain a legal right to proceed with development. The Public Works Agreement, upon which the County here relies, was executed by Bama and the County on October 10, 1978, but was expressly predicated upon a Subdivision Agreement entered into on April 4, 1977. These dates are significant because the County expressly relied upon two ordinances, one of which was enacted on July 18, 1978, as its authority to compel Bama to improve an existing road as a condition for subdivision approval. The ordinance referred to as Section 13-121 (c), which is the only clearly expressed authority to impose such condition, was not enacted until after the condition was imposed and agreed to by Bama on April 4, 1977.

In addition to general issue pleas, appellants filed a special plea of ultra vires 'because Anne Arundel County did not have the authority to demand the promises made by Defendants as a condition for subdivision approval.' They also filed a unique

counterclaim seeking 'declaratory relief', asking the court to declare the Public Works Agreement and the bond securing it to be null and void, because it took Bama's property without compensation and required it to do more work than is constitutionally authorized. Because of the obvious incongruity of using the declaratory judgment procedure to counterclaim, we will not address that issue but will treat the constitutional issue as a defense entered under the general issue plea." *Id.* at 15-16.

Before proceeding further with the construction of the houses, Key prudently concluded that it would be better to determine whether the County could do what it threatened to do: withhold the required use and occupancy permits.

The County bases its authority to withhold the occupancy permits on certain provisions in the Public Works Agreement and on Sections 3-202 and 3-203 of the County Code.

The pertinent parts of the Agreement read:

"IT IS FURTHER UNDERSTOOD AND AGREED that no Certificate of Occupancy, shall be issued without the prior approval of the Department of Public Works of Anne Arundel County.

\* \* \*

If there is no surety, or if the surety fails to take the required corrective action, it is hereby stipulated that any construction or conveyance privileges granted to the subdivider or his assigns in way of the improvements guaranteed by this Agreement may be suspended by Order of the County Executive as may be necessary to protect the public interest in the premises pending completion of the required improvements."

At the time this dispute arose Code Sections 3-202 and 3-203 read:

Sec. 3-202. Requirements for issuance.

No building permit shall be issued under any circumstances or conditions that are in conflict with any provision or requirements of this building code, public works ordinances, subdivision regulations, Zoning Ordinance or any other applicable Law. No building permit for any construction on vacant land shall be issued until such time as provisions have been made and approved for the improvement of adjacent or abutting streets, or provisions for their improvements have been accomplished under the provisions of applicable county law or for the appropriate law of the municipality when such permit is requested for work to be accomplished within a municipality. The building official is hereby authorized and directed to assist in the enforcement of such statutes, ordinances and regulations to the full extent of the powers delegated to him in this subtitle.

Sec. 3-203. Certificate of use and occupancy.

A certificate of use and occupancy for any building or structure erected, altered, repaired or changed to a different use after the adoption of this subtitle shall not be issued unless such building or structure was erected, altered or repaired and is otherwise in compliance with the provisions of this subtitle and all other applicable laws, regulations and agreements, and has passed final inspection. It is unlawful to occupy or allow occupancy of a building without first obtaining a certificate of use and occupancy from the building official."

The County argues that, based on the foregoing, appellant could obtain a Certificate of Use and Occupancy only ". . . if the Public Works Agreement in question were not in default." Further, the County contends that, ". . . the Public Works Agreement set forth a mechanism by which the roads, sidewalks, storm drains and other public amenities are placed on or in proximity to the subject lot before it can

be built upon and/or occupied." And, therefore, "the improvements are an integral part of the permit process." Hence, unless the Public Works Agreement is performed to the satisfaction of the County, it is under no obligation to issue the Certificate of Use and Occupancy.

Appellant Key Federal argued below and argues here that County Code Section 13-113.4 is controlling and supports its position that the County does not have the legal authority to withhold the Use and Occupancy Certificate. That section provides:

"Sec. 13-113.4. Same — Subdivision agreement.

Prior to final plat approval, the subdivider shall file a subdivision agreement covering his financial obligations for all public construction and other improvements attendant to his subdivision, if not guaranteed by a public works agreement under section 13-122. If a public works agreement has not been entered into and construction has not begun within two (2) years of the final plat approval, subdivision approval will be null and void. The subdivider will then be required to conform with the subdivision regulations in effect at that time. Should there be no subdivision regulation changes during this two (2) year period, the plat would only be subject to final plat review. For the final subdivision plat approval to remain in effect, the subdivider must be in operation under a public works agreement and be in continuous operation without interruption for not more than one (1) year at any given period of time. An appropriate notice to title examiners shall be placed on the plat as follows in the event a public works agreement is not entered into prior to final approval. *A subdivision agreement permits the recording of the plat but no construction or sale of property as noted below.*

## NOTICE TO TITLE EXAMINERS

1.  This plat has been approved for recording only, subject to a Subdivision Agreement with Anne Arundel County, dated _____ and recorded among the Land Records of Anne Arundel County, Maryland, in Liber _____ Folio _____ _____.

2.  *No sale or contract of sale of said lots shown hereon shall be made until the necessary improvements have been satisfactorily guaranteed by a Public Works Agreement, supported by a surety bond, certified check, cash or an irrevocable letter of credit from a local bank or such other security as authorized by law and that such Agreement has been entered into by the developer with the Public Works Department in accordance with Subdivision Regulations.*

3.  *No building permits shall be issued for any construction in this development other than sample permits, until the requirements of paragraph (2) above have been compiled with."* (Emphasis supplied).

The foregoing "Notice to Title Examiners" is the only notice that is required by law to be given to the general public. A purchaser of a lot in a subdivision subject to such notice is not required to determine whether the Public Works Agreement has been *performed* to the satisfaction of the County so long as he determines that the improvement required by the Public Works Agreement has been *guaranteed* in accordance with the above notice. And when he purchases such a subdivision lot he is entitled to rely on that notice.

Paragraph 2 simply provides that no sale or contract of sale of the lots may be made until the necessary improvements have been *satisfactorily guaranteed* by a properly bonded or financed Public Works Agreement.

Paragraph 3 contains the same provision with reference to building permits. The obverse of this is that if there is compliance with the requirements, then a sale or contract of sale may be made and a building permit shall be issued, provided there are no other existing impediments. The County Council has not explicitly authorized imposition of an additional impediment, and we will not infer one. *See* 3 R. Anderson, *American Law of Zoning* § 19.19 at 425 (2d ed. 1977). It would make no sense to require posting of a bond if the performance itself were nonetheless required as a necessary predicate to issuance of the necessary permits.

Section 13-122 (b) of the County Code requires, in part, that "the *performance* of such public works agreement by the developer shall be guaranteed by a bond . . ." or ". . . a certified check, cash, certificate of deposit or an irrevocable letter of credit from a local bank or other accredited institution. . . ." (Emphasis added).

The requirement is not performance; it is the satisfactory guarantee of the necessary improvements by a bonded or funded Public Works Agreement. "Where a [political subdivision] accepts a bond in lieu of improvements, it may not later demand both the improvements and the bond as a condition of . . . approval." 7 P. Rohan, *Zoning and Land Use Controls,* § 45.04 [8] at 45-125 to 45-126 (1983). The rationale for this holding was stated in 4 R. Anderson, *American Law of Zoning,* § 23.46 at 159 (2d ed. 1977):

> "If approval of a plat were in all cases delayed until the installation of required improvements, the development of land would be unnecessarily delayed, and the process would involve financial risks which the developer might be unwilling to take. In addition, building permits could not be issued in most jurisdictions, and even the sale of lots in the plat might be held up pending completion of all improvements. This would impose a severe financial burden on the developer."

We agree with the appellant that *Northport v. Guardian Fed. S. & L. Assoc.,* 87 Misc. 2d 344, 384 N.Y.S.2d 923, 926 *aff'd,* 54 A.D.2d 893, 387 N.Y.S.2d 1015 (1976), contains the reasoning that we should adopt for our holding in this case. The Supreme Court of New York held that once the Village of Northport had chosen to accept a performance bond in lieu of prior completion of improvements, ". . . building permits will be issued and the developer and individual lot owners may proceed with the erection of the buildings." The New York appellate court went on to point out that there is no authority to exact "further consideration from the developer once" the performance bond has been accepted in lieu of performance. In the case *sub judice,* the County, which has chosen by its ordinances to rely on a *financial guarantee* of *performance* as an alternative to performance "may not now reverse its decision and demand both." *Id.*

When the County demanded performance of the Public Works Agreement in addition to seeking damages on the performance bond, Key Federal sought a judicial declaration of its obligations before continuing construction. The County observes that there has been virtually no construction on Key Federal's two lots, and that the building permits issued to appellant have become void through disuse. Since the issuance of a Certificate of Use and Occupancy requires completion of construction in accordance with the previously issued building permits, the County argues that the question of whether it can withhold the Certificate pending completion of the Public Works Agreement is moot. We disagree.

The declaratory judgment remedy provided in Subtitle four of the Courts and Judicial Proceedings article clearly encompasses a case such as this. Section 3-402, Purpose and Construction of Subtitle, provides:

> "This subtitle is remedial. Its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. It shall be liberally construed and administered."

Key Federal, uncertain about its obligations, properly sought relief from the County's assertion of authority to withhold necessary permits. Its prudent cessation of construction pending adjudication of its rights did not obviate its need to obtain a declaration of those rights.

The County also argues that Bama, Inc., the developer and the bonding company under the Public Works Agreement, by deciding to litigate rather than construct the public improvements, defaulted under the Agreement and failed to take corrective action, respectively. As previously noted, the Public Works Agreement authorizes the County Executive to suspend construction or conveyance privileges "if the surety fails to take the required corrective action." The County implicitly assumes, however, that complete performance of the Public Works Agreement is the required corrective action. That assumption is now being litigated. If we were to accept the County's position that litigation of its authority enables it to suspend necessary construction and conveyance privileges permanently, any developer, contractor or lot owner subject to a public works agreement would be at the mercy of the County regardless of whether it actually had the authority it claimed.

Anne Arundel County Code Section 3-203 is not applicable since the Public Works Agreement does not govern the erection, alteration, repair or change of building structures, but only "public improvements".

Based on the foregoing we conclude that under the facts of this case the County lacks the authority to withhold either building permits or use and occupancy certificates once the appellant has otherwise complied with county building regulations.

It was not proper for the Circuit Court to dispose of this case simply by granting summary judgment without also making a declaration of the rights of the parties. *Carroll*

*County Education Association, Inc. v. Board of Education of Carroll County,* 294 Md. 144, 155-56 (1982).

> *Judgment reversed; case remanded*
> *for entry of declaratory judgment*
> *declaring the rights of the parties*
> *in accordance with this opinion.*
> *Costs to be paid by appellee.*