713 A.2d 351

## COUNTY COMMISSIONERS OF QUEEN ANNE'S COUNTY et al.,

v.

## DAYS COVE RECLAMATION COMPANY, et al.

**No. 1477, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

July 15, 1998.

506

Kurt J. Fischer (Roger D. Redden, Brett Ingerman, Piper & Marbury, L.L.P., Baltimore, Patrick E. Thompson, County Atty. and Foster, Braden & Thompson, L.L.P., Stevensville, on the brief), for appellant, County Com'rs. J. Carroll Holzer and Holzer & Lee, Towson, on the brief, for appellant, Pinder.

Warren K. Rich (William D. Evans, Jr. and Rich & Henderson, P.C., on the brief), Annapolis, for appellees.

Argued before DAVIS and EYLER, JJ., and SHERRIE L. KRAUSER, Judge (Specially Assigned).

DAVIS, Judge.

This is an appeal from a judgment of the Circuit Court for Baltimore City in favor of appellees/cross-appellants Days Cove Reclamation Company and Springview Land Partnership, Inc. (appellees). The judgment (1) enjoined appellant/cross-appellee the County Commissioners of Queen Anne's County (appellant) from (1) amending its Solid Waste Management Plan (SWMP or Plan) to delete appellees' proposed rubble landfill and (2) declared that Ordinance No. 96–13, an amendment to the County's Zoning Ordinance that imposed certain terms and conditions on the establishment and operation of landfills within the County, was invalid and preempted by State law.[1]

Appellees cross-appealed, asserting that Ordinance No. 96–13 violates the Commerce Clause of the United States Constitution and 42 U.S.C. § 1983. They also argue that the Maryland Department of the Environment (MDE) should

---

1. The circuit court also held that the County's prior determination that the landfill was consistent with the SWMP remains in effect and satisfies the corresponding requirement in MD.CODE, Envir. § 9–210(a)(3). Additionally, the circuit court denied appellees' request for counsel fees under 42 U.S.C. § 1983.

have been permitted to retain overview control over the pending landfill permit.

By Order dated October 2, 1997, this Court granted a motion of Edward G. Pinder, Evelyn Glanding, and Peggy Boyles (owners of property in the neighborhood of the proposed rubble landfill) and the Millington Quality of Life Preservation Coalition (collectively, "appellant Pinder") to be joined as appellants/cross-appellees.[2]

Appellants raise three questions for our review which we have distilled for clarity:

I. Did the circuit court err in holding that appellants' proposed plan amendment was ripe for adjudication under the Uniform Declaratory Judgments Act, Md. Code, Cts. & Jud. Proc. (C.J.), §§ 3–401 to 3–415?

II. Did the circuit court err in enjoining appellant from amending its SWMP so as to remove appellees' rubble landfill from the Plan?

III. Did the circuit court err in holding that Ordinance No. 96–13 was an invalid exercise of County zoning and land use authority?

On cross-appeal, appellees raise an additional question:

IV. Did the lower court err in failing to find that Ordinance No. 96–13 violated the Commerce Clause, thereby giving rise to a 42 U.S.C. § 1983 claim?

We answer questions I, II, and IV in the negative; however, because we conclude that the record does not support the trial court's finding that several of the standards included in the local ordinance were unreasonable and failed to "bear a sub-

---

2. Previous to this Court's October 2, 1997 Order, appellant Pinder had filed similar motions in the Circuit Court for Baltimore City in an effort to intervene after that court's decision in this case on July 7, 1997. On August 5, 1997, the circuit court denied appellant Pinder's Motion to Intervene and, from that decision, appellant Pinder filed an appeal to this Court on August 18, 1997. As stated by appellant Pinder, to the extent that this Court's Order of October 2, 1997 permitted intervention in the instant appeal, the appeal filed on August 18, 1997 has been rendered moot.

stantial relationship to the protection of the public," we remand for further proceedings to determine the existence, *vel non,* of a nexus between the challenged "stringent performance standards" and the County's general welfare.

## FACTS

On February 15, 1990, appellee Springview Land Partnership (Springview) purchased real property located at the junction of Glanding and Peters Corner Roads in Queen Anne's County, Maryland. Appellee Springview decided to collaborate with appellee Days Cove Reclamation Company for the purpose of developing and operating a rubble landfill on the acquired property. In June 1993, appellees notified the Queen Anne's County Department of Public Works of its desire to locate a rubble landfill on the property and requested that the County amend its SWMP to include the proposed facility. On October 18, 1994, then-Commissioner Archibald McGlashan introduced legislation amending the SWMP to provide for certain existing and planned rubble landfills, including the landfill planned for appellees' property. On November 1, 1994, the Commissioners held a public hearing on the proposed amendment to the SWMP. The hearing was part of a biennial review of the SWMP as required by MD. CODE (1996 Repl.Vol.), Envir. § 9–503 (§ 9–503(b) requires a review of the plan at least once every three years). The Commissioners approved the amendment, incorporating the property as a proposed rubble landfill with the caveat that "[t]he proposed facility will not be allowed to accept any material until it receives all state, local, and other required permits and approvals."

In December 1995, representatives of appellees met with the County Administrator and the Director of the Department of Public Works to explain their plans for the rubble landfill and to seek the County's support. Appellees assert that, at the meeting, County officials advised that a revised SWMP would be developed that would provide additional statistical data that further supported the need, both in Queen Anne's County and throughout the Eastern Shore of Maryland, for

the planned landfill. Appellees aver that the County officials successfully encouraged them to forego filing an application for a conditional use permit with the Board of Appeals until the revised SWMP was developed. Appellants, on the other hand, state that the County officials did not represent to appellees that the revised SWMP would support the need for the proposed landfill or advise them that appellees should delay filing an application for a conditional use permit. Nevertheless, relying on the inclusion of the property in the SWMP, appellees continued to develop plans and prepare permit applications for the proposed landfill.

On June 24, 1996, appellees submitted their initial application to MDE for a refuse disposal permit for the proposed facility.[3] Along with their application, appellees submitted a Phase I Report—a site characterization that includes general information regarding site features, land use, geology of the site vicinity, and information on the proposed facility. Section IX of the Phase I Report, entitled "Conformance with the Queen Anne's County Solid Waste Management Plan," indicated that "the proposed site was included in the Queen Anne's County Solid Waste Management Plan in 1994." A copy of the Phase I Report was provided to the Department of Public Works.

---

**3.** Thereafter, on July 2, 1996, the Commissioners enacted County Ordinance No. 96–07, which imposed a moratorium on "the application for, processing or approval of any sewage sludge storage facility or rubble landfill for a period of six months." In separate litigation instituted shortly after its enactment, Ordinance No. 96–07, among other local provisions, was found by the Circuit Court of Queen Anne's County to be irreconcilably in conflict with the State's statutory and regulatory authority to issue sewage sludge utilization permits. Accordingly, the Ordinance, as well as other provisions, was impliedly preempted by State law. *Soaring Vista Properties, Inc. v. County Comm'rs for Queen Anne's County*, Circuit Court for Queen Anne's County, Civil No. 5675 (March 10, 1997, Sause, J.). The County appealed the preemption issue to this Court, but not as to Ordinance No. 96–07, and this Court reversed the circuit court in an unreported opinion. *County Comm'rs of Queen Anne's County v. Soaring Vista Properties, Inc.*, No. 741, Sept. Term, 1997, filed March 24, 1998. That opinion was subsequently refiled as a reported opinion on April 29, 1998. *County Comm'rs of Queen Anne's County v. Soaring Vistas Properties, Inc.*, 121 Md.App. 140, 708 A.2d 1066 (1998).

On October 30, 1996, the MDE sent a letter to the County requesting the County to provide a written statement as to the status of appellees' proposed landfill under the County's zoning and land use requirements and the SWMP. The County responded by letter dated November 26, 1996, stating: "As the Applicants [appellees] have not received conditional use approval from the Board of Appeals, the proposed rubble landfill is at present not in conformance with the Zoning Ordinance." [4]

As to whether the proposed facility was in compliance with the current SWMP, the County responded:

The existing 1976 Solid Waste Management Plan was amended by ordinance with the introduction of legislative bill # 94–16 on October 18, 1994 which was followed by a legislative hearing on November 1, 1994 to include the proposed Unicorn Facility site as a potential rubble landfill. Therefore, this permit application is in conformance with the County's *current* Solid Waste Plan as amended.

Queen Anne's County is now in the fourth month of a six month moratorium which has temporarily halted development of rubblefills and sludge storage facilities. The County Planning Commission has recommended several modifications to the Zoning Ordinance which, if adopted, would not permit the proposed rubble landfill, even as a conditional use. *Our Public Works Department is nearing completion of an updated Solid Waste Management Plan which likewise, would have an effect on this application if and when adopted.*

As a result of these pending matters which may directly impact this application, we ask that our request for an informational meeting concerning the Unicorn Facility be withdrawn until such time that it meets the criteria you

---

4. A rubble landfill is a conditional use that must be approved by the Board of Appeals.

have identified. We will keep you advised of any future developments concerning this project.

(Emphasis added.)

In a letter dated December 31, 1996, the MDE informed appellees that, because the County Board of Appeals had not granted a conditional use permit, the MDE would not proceed further with its permit review process. The letter stated:

The [County's] letter states that "this permit application is in conformance with the County's current Solid Waste Plan as amended." This statement satisfies the requirement under Section 9–210(a) of the Environment Article, Annotated Code of Maryland. The letter also states that "the proposed rubble landfill is at present not in conformance with the Zoning Ordinance." This statement, however, does not satisfy the zoning and land use requirements under the same statute. Please note that MDE has no jurisdiction over local government issues such as this. We will not proceed any further with the permit review process and will place this application in an inactive file.

On November 19, 1996, the Planning Commission introduced Ordinance No. 96–13 to the Commissioners. The Ordinance was drafted by the Planning Commission with the help of County residents. It contained numerous amendments to the 1994 Queen Anne's County Zoning Ordinance and Subdivision Regulations. The amendments, *inter alia*, (1) include rubble landfills in the definition of "waste disposal facility," (2) provide that all new waste disposal facilities be owned and operated by Queen Anne's County or a multi-jurisdictional regional authority, (3) allow waste disposal facilities only in zoning districts designated as agricultural (AG) and suburban industrial (SI) districts, where such facilities are a conditional use, and (4) prescribe performance standards for the construction and operation of rubble landfills in the County. Neither the Planning Commission nor the Department of Planning, which advises the Planning Commission in its development of zoning amendments, conducted any survey, study, or other investigation to determine whether rubble landfills that are

privately owned presented risks to the public health, safety, or welfare that were greater or different from the risks presented by publicly-owned facilities.

In a preface to the proposed Amendments, the Planning Commission stated: "The Planning Commission is mindful that most waste sought to be disposed of in Queen Anne's County is not generated in Queen Anne's County." It further noted that "Queen Anne's County should not become a convenient 'dumpsite' for waste products generated elsewhere. . . ."

On December 17, 1996, a public hearing was held before the Commissioners, at which the Ordinance No. 96–13 received substantial support from County residents. The Commissioners enacted the Ordinance on January 7, 1997, effective as of February 21, 1997.

In or about the second week in January 1997, the County Commissioners published notice that they were proposing to adopt a revised SWMP and that a public hearing would be held on January 28, 1997. Appellees assert that they received the notice on January 27, 1997. The SWMP revisions would, among other things, remove the proposed landfill from the Plan. Representatives of appellees attended the hearing and offered oral and written comments. County residents who owned nearby property also attended the hearing and expressed their support for the revisions. As of oral argument, no formal action had been taken with respect to the proposed revisions.

Before the Commissioners made any determination as to whether to retain or remove the proposed landfill from the County's revised SWMP, appellees filed a Complaint and First Amended Supplemental Complaint for Writ of Mandamus, Declaratory Judgment, and Other Ancillary Relief against the MDE and the County in the Circuit Court for Baltimore City. Appellees alleged that Ordinance No. 96–13 and the County's proposed revision of its SWMP (1) were impliedly preempted by the State's statutory and regulatory scheme for issuing rubble landfill permits, (2) discriminated against interstate and intercounty commerce by requiring that waste disposal facili-

ties be publicly owned in violation of the Commerce Clause of the United States Constitution, and (3) violated 42 U.S.C. § 1983 by depriving appellees of their constitutional rights to due process and equal protection.

The MDE moved to dismiss the Complaint, arguing, among other things, that "[t]he issue of the [MDE's] decision to approve or disapprove the alleged amendments to the Queen Anne's County plan is not ripe for adjudication because the County has not adopted the alleged amendments and further has not submitted any amendments to the Department for review." The County joined in the MDE's motion at oral argument.

Following a June 16, 1997 hearing, at which no testimony was presented, the circuit court issued a Memorandum and Order dated July 7, 1997, finding that: (1) the county's proposed revision of its SWMP to remove the landfill was "imminent" and, therefore, the issue was ripe for adjudication; (2) Ordinance No. 96–13 was invalid because it (a) precluded private ownership of a waste disposal facility, (b) contained unreasonably stringent performance standards for the construction and operation of such facilities and (c) was impliedly preempted by State law; and (3) the County's proposed revision of its SWMP to remove the Unicorn Facility was impliedly preempted by State law. Appellants timely appealed and appellees filed a cross-appeal.

## DISCUSSION

### I

■ Appellants argue that the issue of whether the County could revise its SWMP to remove appellees' landfill facility from the Plan was not ripe for adjudication in the circuit court. We agree with the circuit court's ruling rejecting appellants' position:

The issue is ripe for declaratory judgment, and the [c]ourt will not refrain from considering the respective merit of the parties' adverse positions. [Appellant's] contention that the

facts of the case are too speculative and that any potential unlawful action is merely future, contingent and uncertain ignores the reality of the actual controversy. Whether or not the County seeks to amend its Plan must be considered within the context of the parties' dispute. The anticipated amendments come in the wake of the enactment of a zoning ordinance which, pending the [c]ourt's decision in the within case, precludes [appellees'] operation of the proposed facility. That ordinance is clearly the precursor to an amended, and with respect to the Unicorn Facility, exclusionary Waste Plan. Action by the County is indeed imminent. The dispute is quite justiciable. Under the so-called "ripeness" doctrine, the [c]ourt is more than satisfied that the case presents " 'ripening seeds' of an actual controversy." *See Boyds Civic Ass'n v. Montgomery County,* 309 Md. 683, 691, 526 A.2d 598 (1987) (quoting *Kariher's Petition (No. 1),* 284 Pa. 455, 471, 131 A. 265, 271 (1925)).

■■■■■ The Maryland Declaratory Judgments Act (Act) is remedial in nature and "[i]ts purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." C.J. § 3–402. The Act shall be liberally construed and administered. *Id.* The language of the statute clearly indicates that the exercise of declaratory jurisdiction is within the sound discretion of the trial court. *See Tanner v. McKeldin,* 202 Md. 569, 577, 97 A.2d 449 (1953) (construing the former Uniform Declaratory Judgments Act—MD. ANN. CODE, art. 31A, § 6). In a declaratory judgment action, the trial court may sit, not only to determine issues of law, but also as the trier of fact. Its factual determinations will not be disturbed unless clearly erroneous. *Aetna Casualty and Sur. Co. v. Brethren Mut. Ins. Co.,* 38 Md.App. 197, 206, 379 A.2d 1234 (1977).

Under the Act a court may grant a declaratory judgment or decree in a civil case (except when divorce or annulment of marriage is sought), if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) [a]n actual controversy exists between contending parties;

(2) [a]ntagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) [a] party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

C.J. § 3–409(a).

■ A primary objective of the Act is to "relieve litigants of the rule of the common law that no declaration of rights may be judicially adjudged unless a right has been violated...." *Boyds Civic Ass'n v. Montgomery County Council,* 309 Md. 683, 691, 526 A.2d 598 (1987) (quoting *Davis v. State,* 183 Md. 385, 388, 37 A.2d 880 (1944)).

Indeed, the Court of Appeals in *Boyds* stated that, "if a court is satisfied that the 'ripening seeds' of an actual controversy exist, the facts are not too contingent or speculative for declaratory relief." *Id.* at 691, 526 A.2d 598 (citation omitted). Citing E. Borchard, *Declaratory Judgments* 57 (2d ed.1941), the *Boyds* Court stated further:

The imminence and practical certainty of the act or event in issue, or the intent, capacity, and power to perform, create justiciability as clearly as the completed act or event, or is generally easily distinguishable from remote, contingent, and uncertain events that may never happen and upon which it would be improper to pass as operative facts.

*Id.* at 692, 526 A.2d 598 (citation omitted). Thus, Maryland law supports declaratory relief in circumstances when the controversial situation is imminent.

In *Key Federal Sav. & Loan Ass'n v. Anne Arundel County,* 54 Md.App. 633, 460 A.2d 86 (1983), this Court held that declaratory relief was proper when a property owner brought an action against a county with respect to the County's threatened withholding of occupancy permits. We held that

the uncertainty of the "threatened" withholding of occupancy permits made declaratory relief proper. *Id.* at 641–43, 460 A.2d 86.

Another case, *Liss v. Goodman,* 224 Md. 173, 167 A.2d 123 (1960), involved a dispute between the Baltimore City Council and its Board of Estimates regarding powers over budgetary matters. The City Council sought a declaration as to whether it had the authority to reject proposed budgets submitted to it by the Board of Estimates. The case presented a question of ripeness because at the time the legislative body sought the declaration, the Board of Estimates had not yet submitted the annual budget and there was no certainty that the City Council would even want to return or reject that particular budget. Nevertheless, the Court of Appeals held that the action was ripe for adjudication. *Id.* at 177–78, 167 A.2d 123. After noting that declaratory action should not be used to decide purely theoretical issues, the Court held that the question before it was practical, rather than theoretical. *Id.* In that regard, the Court stated that "[i]t would seem to be particularly appropriate to have the issue resolved in advance" in order to avoid adverse effects to the City's financial status caused by its assertion of the right to reject the annual budget. *Id.* at 178, 167 A.2d 123.

By contrast, appellants rely primarily on three cases to support their position that the issue of whether the County may revise its SWMP to exclude the landfill is not ripe for review. Those cases, *Maryland Reclamation Assocs., Inc. v. Harford County,* 342 Md. 476, 677 A.2d 567 (1996), *Hatt v. Anderson,* 297 Md. 42, 464 A.2d 1076 (1983), and *Patuxent Oil Co. v. County Comm'rs of Anne Arundel County,* 212 Md. 543, 129 A.2d 847 (1957), are distinguishable from the instant case, and therefore, do not support appellants' position.

In *Maryland Reclamation Assocs.,* the ripeness issue did not concern whether there existed a justiciable controversy as a prerequisite to the maintenance of a declaratory judgment action. Rather, it pertained to whether the plaintiff had given the local zoning authority the opportunity to render a final

decision on the nature and extent of the zoning ordinance (thereby exhausting all administrative remedies) in order to maintain a 42 U.S.C. § 1983 claim. *Maryland Reclamation Assocs.,* 342 Md. at 476, 677 A.2d 567.

*Hatt* involved a declaratory judgment action that sought to invalidate a county fire department regulation that prohibited criticism of superior officers. As noted in *Boyds,* 309 Md. at 692, 526 A.2d 598, the *Hatt* declaratory judgment action should have been dismissed because there was no allegation that the regulation had been or was threatened to be applied to the plaintiff in any particular way. *Hatt,* 297 Md. at 46–47, 464 A.2d 1076. In the instant case, appellees alleged that the change to the SWMP would apply to them.

In *Patuxent Oil Co.,* declaratory relief was not available because the plaintiff, unlike appellees herein, had never claimed any denial by the county government of any asserted right and had abandoned the license that was the subject of the litigation. *Patuxent Oil Co.,* 212 Md. at 549–50, 129 A.2d 847.

Appellees' claim as to the landfill's exclusion from the County's SWMP is not premature. We recognize, as did the trial court, that the SWMP has not yet been amended and that any amendments must be approved by the MDE before they can be implemented. We agree with the trial court, however, that the issue of whether the County seeks to amend the SWMP must be considered within the context of the parties' dispute. The anticipated amendments to the SWMP came in the wake of the enactment of Ordinance No. 96–13, which precludes appellees' operation of the proposed facility. Further, the County's November 26, 1996 letter to the MDE stated:

The County Planning Commission has recommended several modifications to the Zoning Ordinance which, if adopted, would not permit the proposed rubble landfill, even as a conditional use. *Our Public Works Department is nearing completion of an updated Solid Waste Management Plan*

*which likewise, would have an effect on this application if and when adopted.*

(Emphasis added.) Considering the County Commissioners' purposeful and coordinated actions in passing the two ordinances, the County's plan to remove the facility from its SWMP, and the letter of November 26, 1996, the circuit court's finding that the Plan revision was "imminent" was not an abuse of discretion. The dispute was quite justiciable as the issue presented the " 'ripening seeds' of an actual controversy." *Boyds,* 309 Md. at 691, 526 A.2d 598.

## II

### A

■ Appellants next contend that the trial court erred in determining that the County's ability to amend its SWMP to exclude the proposed landfill was preempted by State law when the landfill had previously been added to the SWMP, but a permit for it had not been issued by the MDE. They further assert that the decision of the trial court divested the County of its traditional zoning power.

Appellees counter, arguing that, because the facility was previously included in the County's SWMP, the County lacked the authority to "delist" the facility in the new County Plan. For this proposition, appellees rely heavily on *Holmes v. Maryland Reclamation Assocs., Inc.,* 90 Md.App. 120, 140–57, 600 A.2d 864 (1992), as did the trial court. We agree with appellees.

■ State law will ordinarily preempt a local law "in one of three ways: (1) preemption by conflict, (2) express preemption, or (3) implied preemption." *Perdue Farms, Inc. v. Hadder,* 109 Md.App. 582, 588, 675 A.2d 577 (1996); *see Talbot County v. Skipper,* 329 Md. 481, 486–88, 620 A.2d 880 (1993); *May Dep't Stores v. Montgomery County,* 118 Md.App. 441, 462, 702 A.2d 988 (1997), *cert. granted,* 349 Md. 237, 707 A.2d 1330 (1998); *J. Roland Dashiell Realty Co. v. Wicomico Co.* 122 Md.App. 239, 249–50, 712 A.2d 104 (1998). In *Ad + Soil,*

*Inc. v. County Comm'rs of Queen Anne's County,* 307 Md. 307, 324, 513 A.2d 893 (1986), the Court explained:

The doctrine of pre-emption is grounded upon the authority of the General Assembly to reserve for itself exclusive dominion over an entire field of legislative concern. When properly invoked, the doctrine precludes local legislative bodies from enacting any legislation whatsoever in the pre-empted field.

 There is no precise formula for determining whether the legislature impliedly intended to preempt an entire field of law. *Skipper,* 329 Md. at 488, 620 A.2d 880; *see Howard County v. Potomac Elec. Power Co.,* 319 Md. 511, 523, 573 A.2d 821 (1990). Absent express preemption, a primary indicator of "a legislative purpose to pre-empt an entire field of law is the comprehensiveness with which the General Assembly has legislated the field." *Allied Vending, Inc. v. Bowie,* 332 Md. 279, 299, 631 A.2d 77 (1993) (citations and quotations omitted); *see Ad + Soil,* 307 Md. at 328, 513 A.2d 893; *Mayor of Baltimore v. Sitnick,* 254 Md. 303, 323, 255 A.2d 376 (1969).

A variety of secondary factors are often considered in deciding whether State law preempts a local law by implication. In *Allied Vending,* the Court stated that courts should consider

1) whether local laws existed prior to the enactment of the state laws governing the same subject matter, 2) whether the state laws provide for pervasive administrative regulation, 3) whether the local ordinance regulates an area in which some local control has traditionally been allowed, 4) whether the state law expressly provides concurrent legislative authority to local jurisdictions or requires compliance with local ordinances, 5) whether a state agency responsible for administering and enforcing the state law has recognized local authority to act in the field, 6) whether the particular aspect of the field sought to be regulated by the local government has been addressed by the state legislature, and 7) whether a two-tiered regulatory process existing if

local laws were not pre-empted would engender chaos and confusion[.]

332 Md. at 299–300, 631 A.2d 77 (citations omitted); *see Mayor of Baltimore v. New Pulaski Co. Ltd. Partnership,* 112 Md.App. 218, 226–27, 684 A.2d 888 (1996), *cert. denied,* 344 Md. 717, 690 A.2d 523 (1997).

The authority of a county to promulgate a comprehensive SWMP is set forth in §§ 9–501 through 9–521 of the Environmental Article and regulations promulgated thereunder at COMAR §§ 26.03.03.01 through 26.03.03.05. As we recently noted in *Mayor and City Council of Baltimore v. New Pulaski Co. Ltd. Partnership,* 112 Md.App. 218, 228–29, 684 A.2d 888 (1996), *cert. denied,* 344 Md. 717, 690 A.2d 523 (1997), a county's role in developing a SWMP is limited and closely supervised by MDE.

Maryland Code, Envir. § 9–503 requires each county to issue a SWMP that is approved by the MDE. Section 9–503(c) requires that amendments and adoptions be submitted to the MDE for approval and sets forth the two circumstances under which a SWMP may be revised or amended: (1) the county governing body considers a revision of amendment necessary, or (2) MDE requires a revision or amendment. Article 66B, § 4.01(a)(1) of the Md. Ann.Code gives counties the power, for the purpose of promoting the health, safety, morals, or general welfare of the community, to regulate and restrict

the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, off street parking, the size of yards, courts and other open spaces, the density of population and the location and use of buildings, signs, structures and land for trade, industry, residence or other purposes.

■ Within Art. 66B, the legislature anticipated and even provided for interaction between the State and local governments with respect to their land use and zoning regulations. Article 66B, § 4.01(d)(1) provides that it is the State's policy that "the orderly development and use of land and structures requires comprehensive regulation through implementation of

planning and zoning controls." Section 4.01(d)(2) provides that it is the State's policy that "planning and zoning controls shall be implemented by local government." Section 4.01(d)(5) provides, in pertinent part, that "[t]he powers granted to the [C]ounty pursuant to this subsection shall not be construed ... [t]o preempt or supersede the regulatory authority of any State department or agency under any public general law." Accordingly, § 4.01(d)(5) recognizes that there will be times when State regulation and local zoning regulation overlap. In certain situations, including, but perhaps not limited to situations in which the two conflict, State regulation prevails.

The trial court's holding that the anticipated amendments to the County's SWMP was preempted by state law is supported by *Holmes.* The legislature has reserved the "permit-issuing segment" of the process to the MDE. *Holmes,* 90 Md.App. at 156–57, 600 A.2d 864. The individual county's role with respect to solid waste management is within the realm of planning, rather than that of permitting, and within that realm, it is one of limited scope. *Id.*

In *Holmes,* we considered whether the Harford County Council had properly excluded the facility proposed by the Maryland Reclamation Associates, Inc. from its Waste Plan after having previously incorporated the landfill within the Plan. We embarked on an exhaustive review of the pertinent statutory scheme and the regulations promulgated thereunder and concluded that they relegate to the local county government exclusive dominion during the planning stage of the process. Specifically, the County is responsible for adopting and maintaining a ten-year Waste Plan. We further concluded that the local county's scope of authority did not involve much discretion. We approvingly described the lower court's consideration of the matter as follows:

The trial court concluded that [COMAR § 26.03.03.05(A)(3) (1988) ] could be interpreted in either of two ways. It could mean that a county possesses veto power over whether a proposed facility actually is given a permit, exercised by the county's decision whether to include the facility in its SWM Plan. Or it could mean that a

county must update its Plan—that the regulation is an obligation the state placed on the counties, and not a grant of power.

The court found the latter interpretation more compelling, and so do we.

*Holmes,* 90 Md.App. at 131–32, 600 A.2d 864. Consequently, the role of the county is limited even during the planning stage of the process.

Ultimately, we affirmed the lower court's decision in *Holmes* that the Harford County Council's (Council) efforts to delist the proposed facility from its Waste Plan were unlawful. We determined that the Council's role was solely to determine whether the facility was consistent with its Waste Plan. The Council had conducted its review earlier when it sanctioned the facility by amending its Plan to include the landfill. Its enactment of a resolution that attempted to delist the facility from the Plan impermissibly infringed on MDE's role in the process. We held that the Ordinance was preempted by the State's statutory scheme. In other words, because the legislature had manifested an intent to occupy the field of landfill regulation and, because the Council's Ordinance delisting the proposed landfill was inconsistent with its limited role as contemplated by the State's legislation, the local resolution was invalid. We stated:

When the Harford County Council enacted Resolution 4–90, it obviously did so because of a feared threat to ground water resources in the area and because of considerations related to land use compatibility. It was not a determination that the site was inconsistent with the Harford County solid waste management plan. Under the statutory scheme, as it exists between the state and Harford County, the "specific determination concerning the hydrogeological conditions of the site and the area" was an impermissible invasion on the state's permit review prerogative.

*Id.* at 157, 600 A.2d 864. The county's determination that the facility was consistent with its Waste Plan precluded a subse-

quent amendment to the Plan that the proposed landfill was somehow not certifiable.

Appellants attempt to distinguish *Holmes* from the instant case by emphasizing that, in *Holmes,* the Council had informed the MDE that the proposed landfill met all of the county zoning and land use requirements, and the MDE, based on that representation, proceeded to issue its preliminary approval for the facility. Thereafter, the County used its SWMP to reverse MDE's approval. Those factual differences do not significantly differentiate *Holmes* from the instant case. Indeed, at the June 16, 1997 hearing, the County admitted: "Well, I think they [the County Commissioners] run head-on into the preemption problem if they delist this particular project. I think that clearly runs afoul of *Holmes,* if they delist it, which they haven't done." The factual differences between *Holmes* and the instant case do not detract from the holding in *Holmes* as it applies to the instant action.

The *Holmes* case governs our analysis in the case *sub judice,* at least with respect to the anticipated Waste Plan amendments. The letters exchanged among the principal parties that were introduced at trial and described, *supra,* demonstrate that the County first amended its Waste Plan to include the proposed landfill. The proposed landfill was, therefore, consistent with the Plan. Consequently, the County's role with respect to the connection between the Plan and facility was fulfilled. We hold, based on *Holmes,* that the trial court correctly found that the County may not now amend the Plan to exclude the facility because of some negative reaction from community representatives. The facility's fate is the province of the MDE.

In circular fashion, appellants contend that the County's ability to revise the SWMP to remove the Unicorn Facility is not impliedly preempted by State law. In making this argument, appellants revisit the *Holmes'* decision which we have already held supports the lower court's findings.

Appellants continue the argument, however, relying on *Ad + Soil, Talbot County,* and *Mayor & City Council.* When

read together, the cases yield the conclusion that the legislature did not preempt by implication the field of landfill utilization with respect to traditional zoning matters, including the location of landfills. Instead of abrogating local zoning authority, the legislature enacted a statutory scheme designed to foster cooperation between the State and local authorities. *See County Comm'rs of Queen Anne's County v. Soaring Vistas Properties, Inc.*, 121 Md.App. 140, 708 A.2d 1066 (1998). Nevertheless, the actions of the County in the instant case transcend the traditional zoning matters of *Soaring Vistas*[5] and fall squarely within the purview of *Holmes* by breaching the "permit" power that is specifically reserved for the State.

## B

Next, appellants assert that the County's proposed revisions of its SWMP cannot be preempted by State law because such revisions must be approved by the MDE and therefore constitute State action, not local legislation. In light of our holding in (II A) above, however, we need not address this issue.

## C

Appellants argue that the circuit court's conclusion that a County may not amend its SWMP to remove a proposed

---

5. In *Soaring Vistas*, we vacated the trial judge's grant of summary judgment, holding that, in accordance with the provision in the draft permit issued by MDE prohibiting violation of "federal, state or local laws or regulations," the statutory scheme contemplated the legislature's intent to complement, not supplement local zoning law. 121 Md.App. at 162, 708 A.2d 1066. More specifically the trial judge erred in determining that MD.CODE (1996 Repl. Vol), Envir. § 9–230, *et seq.* preempts by implication §§ 4002 and 7203(c) of the local ordinance. The County commissioners, in the case at hand, approved an amendment including the Unicorn Facility in its solid waste management plan, then enacted an Ordinance, No. 96–13, announcing a new term, "waste disposal facility," requiring public ownership and setting forth numerous performance standards. In other words, we are here concerned with circumstances that indicate the County attempted to change the rules in the middle of the game whereas *Soaring Vistas* dealt with whether traditional zoning matters invaded the State's prerogative to issue a permit, pursuant to Envir. § 9–230, *et seq.*

landfill is contrary to the Maryland law of vested rights in land use. Specifically, appellants assert that the circuit court has, in essence, determined that, once a proposed landfill is included in a SWMP, the proponents of the landfill obtain a vested right to develop such a facility, subject only to MDE permitting approval.

Appellees counter, noting that appellants did not raise this particular argument below. In its reply brief, appellant (County Commissioners) state that it has merely cited the "vested rights" line of cases for the purpose of supporting its argument that a SWMP may be amended to delete a facility as long as the purpose and effect is not to reverse a substantive decision of the MDE.

We need not address this issue as our prior discussion renders moot any further review of the SWMP amendment.

## III

### A

 Appellants aver that the trial court erred when it found that Ordinance No. 96–13 was invalid in that it required public ownership of rubble landfills. Appellees respond, arguing that the County lacks the authority to ban private ownership of landfills. We agree.

 The local ordinance my be challenged in one or more of the following ways:

(1) Ordinance exceeds powers granted to the County under Article 66B, § 4.01;

(2) Ordinance is arbitrary and capricious;

(3) Ordinance is preempted by State law.

Queen Anne's County's authority with respect to zoning is defined in Md. Ann.Code Art. 66 B (1995). Article 66B does not grant authority to prevent or exclude private ownership or property. Rather, it sets forth the General Assembly's intent to limit certain counties to traditional zoning powers, such as regulation of the height, number of stories, and size of build-

ings. As the court below stated, "The scope of the zoning authority statutorily delegated to the local jurisdictions is limited to restrictions on the use of land." In other words, zoning regulations must be directed toward restricting use rather than ownership or location. *See Delbrook Homes, Inc. v. Mayers*, 248 Md. 80, 234 A.2d 880 (1967); *see also Feinberg v. The Southland Corp.*, 268 Md. 141, 152, 301 A.2d 6 (1973) (stating that zoning ordinances are "concerned with the use of property and not with ownership thereof nor with the purposes of the owners or occupants"). Neither Art. 66B nor relevant case law grants to the County the power to institute the present ownership ban.

Appellants assert that Ordinance No. 96–13 does not "contain a single restriction on who may own the property," rather "it provides only that the owner of the property may not use it to operate a private rubble landfill." Appellants' argument rests, for the most part, on semantics. Additionally, they ignore Section 2300 of the Ordinance, which states that "[a]ll such facilities shall be owned and operated by Queen Anne's County or a multi-jurisdictional regional authority."

As an alternative, appellants cite cases from other states in support of their position that Ordinance No. 96–13's exclusion on private ownership of landfills is valid. Since appellants can point to no persuasive Maryland or United States Supreme Court precedent that supports their right to regulate the ownership of property under Art. 66B, we reject that argument.

**B**

Appellants argue that the trial court erred in finding that Ordinance No. 69–13 is "riddled with unreasonably stringent performance standards which bear little relation to Queen Anne's County's public health, safety, or welfare."

Without explicitly finding that the County's actions were pretextual and a mere ploy to delist the facility, the court concluded that

Queen Anne's County has not necessarily overstepped its bounds. A proposed landfill must conform to "all applicable county zoning and land use requirements." Md.Code Ann., Envir. § 9–210(b). Notwithstanding the fact that the County is appropriately performing its statutory role, the County *may not do that which it has no authority to do. It may not regulate under the guise of its zoning authority as it has chosen to do with respect to the Unicorn Facility.* (Emphasis added). Citing a prior *nisi prius* opinion of the lower court, the trial court said,

> [The Plan] is intended to provide a long term framework to address the waste disposal needs of the counties and the State. It is not intended as a means to micro-manage, or veto specific facilities, based on the momentary tide of public opinion. The [c]ourt is constrained to reemphasize this principle. Waste management is largely a state endeavor which involves a limited and specific role. The particular county may neither act beyond that role nor act improperly within it.

 Although Ordinance No. 96–13 purports to address potential public health and environmental issues associated with rubble landfills in a land use regulation context, the lower court pointed out only that the Ordinance required waste disposal facilities to be located on "at least one hundred (100) acres that has direct access to an arterial or collector road." In commenting upon that requirement, the court noted that compliance with such a standard was "difficult to imagine" and that compliance therewith would not advance the County's general welfare. Finally, the court concluded, without enumeration or specific analysis, that "[s]everal of the standards set forth in the [O]rdinance" were unreasonable and failed to "bear a substantial relationship to the protection of the public." In essence, the lower court found the Ordinance arbitrary, capricious, and illegal.[6] Based on the inadequate record

---

6. In addressing circumstances in which local subdivisions exceed their zoning authority when motivated by improper considerations, we said,

before us, we are unable to agree with the lower court. Accordingly, we must remand for further proceedings in the circuit court to develop a record on the limited question whether a rational nexus exists between each of the challenged "stringent performance standards" and the County's general welfare. In other words, the court must determine on an adequate record whether the standards, or any part of them, are merely a pretext for delisting appellees' proposed facility.

 The circuit court's decision on remand will determine the direction of the case hereafter. Because Ordinance No. 96–13 by its terms required public ownership of the facility from which the proposed activity would be conducted, compliance *by appellees* with the zoning ordinance requirement that a conditional use application be approved was an impossibility and appellees were constrained to challenge it immediately. Even approval of a variance from that prohibition would have been unavailable to them. Now that the requirement of public ownership has been invalidated, appellants once again appear to have the ability to seek conditional use approval or variances. Consequently, after the circuit court's limited determination on remand, appellees will be required to exhaust their administrative remedies by following the normal application process before proceeding further in circuit court. *See Maryland Reclamation Associates, Inc. v. Harford County, Md.,* 342 Md. 476, 677 A.2d 567 (1996). The governing performance standards will be those that are in effect after the limited determination on remand as described above.

---

in *County Commissioners v. Soaring Vistas,* 121 Md.App. at 167, 708 A.2d 1066:

We emphasize that local zoning boards may not utilize the conditional use process as a ploy to frustrate or undercut an identifiable State objective. Stated otherwise, *a zoning board may not arbitrarily or unlawfully withhold approval of a conditional use application that satisfies valid criteria,* in order to preclude the erection of an unwanted sewage sludge storage facility. Nevertheless, such contentions are not before us; the local zoning authorities never considered the merits of appellees' conditional use application.

## IV

On cross-appeal, appellees assert that the trial court erred in failing to find that the County's actions violate the Commerce Clause of the United States Constitution. That assertion must fail. The only support for appellees' position is the prefatory language to the Planning Commission's draft recommendation expressing the Planning Commission's concern that the County not become a dump site for out-of-state waste. That language was not adopted or approved by the County Commissioners and does not appear anywhere in the Ordinance. Appellees' arguments that appellants may at some point in the future restrict the flow of waste to domestic sources is mere speculation. The Ordinance simply requires that a rubble landfill be publicly owned. There is no requirement that waste disposed of at County facilities be generated in the County.

## CONCLUSION

We hold that the lower court did not err in (1) finding that the viability of appellant's (County Commissioners) proposed SWMP amendment was ripe for adjudication under the Uniform Declaratory Judgment Act, (2) enjoining appellant (County Commissioners) from amending its SWMP so as to remove the rubble landfill from the Plan, (3) finding the ownership provision in Ordinance No. 96–13 invalid, and (4) holding that Ordinance No. 96–13 did not violate the Commerce Clause. We vacate the remaining portions of the lower court's order and remand for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART; OTHERWISE VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT COUNTY COMMISSIONERS OF QUEEN ANNE'S COUNTY AND ONE–HALF BY APPELLANTS PINDER, GLANDING, AND BOYLES.**